# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NETWORK COMMODITIES, LLC, et al., | Civil No. 11-3119 (NLH/KMW) |
| Plaintiffs, | **OPINION** |
| v. | |
| GOLONDRINAS TRADING CO., LTD., et al., | |
| Defendants. | |

**APPEARANCES:**

William A. Riback, Esquire
William Riback, LLC
132 Haddon Ave.
Haddonfield, NJ 08033
    *On behalf of Plaintiffs Network Commodities, LLC and*
    *Nebraskaland, Inc.,*

Sean J. Kirby, Esquire
Sheppard Mullin Richter & Hampton LLP
30 Rockefeller Plaza
Suite 2400
New York, NY 10112
    *On behalf of Defendants Golondrinas Trading Co., LTD and*
    *Damian Miriello.*

**HILLMAN, District Judge**

        This matter comes before the Court by way of motion by

Defendants Golondrinas Trading Co., LTD (hereinafter,

"Golondrinas") and Damian Miriello (hereinafter, "Defendant

Miriello") [Doc. No. 17] seeking to dismiss Plaintiffs' Second

1

Amended Complaint.  Dismissal is sought pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted.  Plaintiffs oppose Defendants' motion.  The Court has considered the parties' submissions and decides this matter pursuant to Federal Rule of Civil Procedure 78.

For the reasons expressed below, the motion will be granted in part and denied in part.

## I.   <u>JURISDICTION</u>

In this action, Plaintiffs assert claims under both federal and state racketeering laws, specifically the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 through 1968, and the New Jersey RICO Statute, N.J.S.A. 2C:41-1 through 2C:41-6.  Plaintiffs also allege claims for breach of contract, fraud in the inducement, and unjust enrichment.  This court exercises both federal question and diversity subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1332.

## II.  BACKGROUND

Plaintiffs' Second Amended Complaint alleges that Defendants engaged in a deceptive and fraudulent scheme to induce Plaintiffs to enter into a series of shipping contracts providing for the

future shipment of wholesale seafood product from Ecuador in exchange for cash advances paid by Plaintiffs.  With respect to their business arrangements, Plaintiffs wired cash advances to Defendants with the expectation that Defendants would ship seafood product exclusively to the Port of New York, located in Newark, New Jersey, where Defendants were responsible for paying all duties, port fees, and entry charges.  (Second Am. Compl. [Doc. No. 24] ¶¶ 50-51, 53, 84-85.)  After shipment, Defendants arranged for transportation of the seafood product to a freezer storage company in Perth Amboy, New Jersey, known as Preferred Freezer, by way of a New Jersey common carrier.  (Id. ¶¶ 53-55, 86-87.)  Defendants allegedly paid the cost of the storage fees and remained the owners of the seafood product while it was stored in New Jersey until it was sold to vendors.  (Id. ¶¶ 55-57, 87-88.)  It was Defendants' responsibility to find buyers for the seafood product shipped into the state of New Jersey, and after the sale, Defendants would distribute the proceeds of sale to Plaintiffs.  (Id. ¶¶ 64, 69, 90.)

Plaintiffs allege, though, that after a certain point in time, Defendants no longer had any intention of actually performing on these contracts.  (Id. ¶¶ 4, 101-102.)  Plaintiff Network Commodities alleges since the time it commenced doing business with Defendants in late 2006, it advanced a total of $3.75 million to Defendants with respect to "more than at least

ten discrete agreements and shipments over a period of approximately five years." (Id. ¶¶ 48, 71.)  However, Defendants apparently failed to ship or deliver any seafood product for all transactions since October 30, 2008 which correspond to wired cash advancements by Network Commodities in the amount of $359,158.40 of the total $3.75 million.  (Id. ¶ 72.)  Plaintiff Nebraskaland likewise contends that it advanced a total of $2.7 million to Defendants since early 2008, and while Defendants shipped and delivered seafood product initially, Defendants failed to ship or deliver any product since October 15, 2008, representing a total amount of $628,864.80 in cash advancements wired by Nebraskaland for which no product was received.  (Id. ¶ 80, 91, 95.)

Both Plaintiffs contend that at the time they "negotiated the specific oral agreements, Defendants intended to take Network Commodities' [and Nebraskaland's] money with no intention to ship any product." (Id. ¶¶ 73, 92.)  Plaintiffs further allege that "Defendants made these promises without the expectation of honoring their promises by shipping the seafood product." (Id. ¶¶ 74, 93.)  Despite Plaintiffs making respective demands for repayment of these funds, Defendants have failed to pay Plaintiffs the funds owed to them.  (Id. ¶¶ 76-77, 96-97.)

Plaintiffs originally filed suit in the Superior Court of New Jersey, Law Division for Camden County, and Defendants

4

subsequently removed the action to this Court.  (Notice of Removal [Doc. 1] ¶ 1.)  Plaintiffs' Second Amended Complaint asserts causes of action for breach of contract (Count One), fraud in the inducement (Count Two), unjust enrichment (Count Three), violations of the federal RICO statute, 18 U.S.C. § 1691, et seq. (Count Four), and violations of the New Jersey RICO statute, N.J. Stat. Ann. § 2C:41-1, et seq. (Count Five). (Second Am. Compl. §§ 120-203.)

III. **DISCUSSION**

Defendants now seek to dismiss Plaintiffs' Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction as to Defendant Miriello and 12(b)(6) for failure to state a claim upon which relief can be granted.

**A.    Rule 12(b)(2) Standard**

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of an action when the Court does not have personal jurisdiction over a defendant.  "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007) (citing Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001)).  In deciding a motion to dismiss for lack of personal jurisdiction, the Court must "accept all of the

plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." Carteret Sav. Bank v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir.), cert. denied, 506 U.S. 817 (1992) (citations omitted).[1]

**B.   Rule 12(b)(6) Standard**

In considering Defendants' motion pursuant to Rule 12(b)(6) for failure to state a claim, the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005); see also Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) ("[I]n deciding a motion under Fed.R.Civ.P. 12(b)(6), [a district court is] ... required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to" the plaintiff). It is well settled that a pleading is sufficient if it contains "a short and plain

---

[1] There is a "significant procedural distinction" between a motion pursuant to Rule 12(b)(2) and a motion pursuant to Rule 12(b)(6). Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984). "A Rule 12(b)(2) motion ... is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence. . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations." Id. (citation omitted).

statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims[.]'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions[.]'") (citation omitted).  First, under the Twombly/Iqbal standard, a district court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949).

Second, a district court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Fowler, 578 F.3d at 211 (citing Iqbal, 129 S. Ct. at 1950).  "[A] complaint must do more than allege the plaintiff's entitlement to relief." Fowler, 578 F.3d at 211; see also Phillips, 515 F.3d at 234 ("The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the

7

pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.") (citing <u>Twombly</u>, 550 U.S. at 556).  "The defendant bears the burden of showing that no claim has been presented." <u>Hedges v. U.S.</u>, 404 F.3d 744, 750 (3d Cir. 2005).

IV.  **<u>ANALYSIS</u>**

**A.  Personal Jurisdiction Over Defendant Miriello**

Initially, Defendants argue that Plaintiffs' Second Amended Complaint should be dismissed in its entirety as to Defendant Miriello pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  (Br. in Supp. of Defs.' Partial Mot. to Dismiss [Doc. No. 17-1] (hereinafter, "Defs.' Br."), 4-6.)  Defendant Miriello argues that he is not subject to personal jurisdiction in this Court because: (1) all of Plaintiffs' claims are based upon the contractual relationship between Plaintiffs and Golondrinas and the allegations directed at Miriello's conduct consist of actions taken in his corporate capacity on behalf of Golondrinas, which are insufficient to establish either general or specific jurisdiction in New Jersey; (2) Plaintiffs cannot demonstrate that Miriello had "continuous or systematic contacts" with New Jersey sufficient to establish general jurisdiction; (3) Plaintiffs failed to show that Miriello

"purposely directed" his activity to New Jersey in order to establish specific jurisdiction; and (4) Plaintiffs cannot satisfy the Calder test for jurisdiction because the allegations of the Second Amended Complaint are insufficient to show Miriello committed an intentional tort.  (Id. at 6-10.)

Plaintiffs assert that the Court has personal jurisdiction over Defendant Miriello because he committed fraudulent acts against a New Jersey company with the knowledge that all effects and consequences of those acts would be felt in New Jersey. (Mem. of Law in Opp. of Defs.' Mot. to Dismiss Pl.'s Comp. [Doc. No. 20] (hereinafter, "Pls.' Opp'n") 22-23.)  Plaintiffs also contend that the Court has jurisdiction over Defendant Miriello because Miriello conducted business in New Jersey, thus availing himself of the privilege of engaging in business activities in this state and did so with Network Commodities over the course of several years.  (Pl.'s Opp'n 25.)  These contacts, Plaintiff asserts, are sufficient to confer jurisdiction over Defendant Miriello.  (Id. at 25.)

Pursuant to Federal Rule of Civil Procedure 4(k) a district court may only exercise personal jurisdiction over a defendant according to the law of the state in which it sits.  The Third Circuit has "recognized that 'New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution.'"  Boyd v.

<u>Arizona</u>, 469 F. App'x 92, 97 (3d Cir. 2012) (citing <u>Miller Yacht Sales, Inc. v. Smith</u>, 384 F.3d 93, 97 (3d Cir. 2004)). Thus, "[i]n keeping with traditional notions of fair play and substantial justice, ... due process permits that parties who have constitutionally sufficient minimum contacts with New Jersey are subject to suit there." <u>Boyd</u>, 469 F. App'x at 97 (citations and internal quotations omitted). In assessing the sufficiency of a defendant's contacts with the forum, the Court may exercise either general or specific jurisdiction. <u>Id.</u> (explaining that "[t]wo brands of personal jurisdiction, viz., 'minimum contacts,' adhere to ... due process principles" – general jurisdiction and specific jurisdiction.) "[G]eneral jurisdiction—exists 'when a defendant has maintained systematic and continuous contacts with the forum state.'" <u>Id.</u> (citing <u>Kehm Oil Co. v. Texaco, Inc.</u>, 537 F.3d 290, 300 (3d Cir. 2008)). "[S]pecific jurisdiction ... exists 'when the claim arises from or relates to conduct purposely directed at the forum state.'"[2] <u>Boyd</u>, 469 F. App'x at 97.

The Third Circuit has delineated a three-part test for determining whether the Court may exercise specific jurisdiction

─────────────────

[2] While Defendant Miriello argues that his contacts with New Jersey are insufficient to demonstrate either general or specific jurisdiction, Plaintiffs seemingly only address specific jurisdiction, apparently conceding general jurisdiction over Miriello does not lie. Accordingly, the Court does not analyze whether Miriello's contacts with New Jersey are continuous and systematic.

over a defendant.  First, the defendant must have "'purposefully directed [its] activities' at the forum." O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).  Second, "the litigation must 'arise out of or relate to' at least one of those activities." O'Connor, 496 F.3d at 317 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984); Grimes v. Vitalink Commc'ns Corp., 17 F.3d 1553, 1559 (3d Cir. 1994)).  Third, if the first two prongs are met, then the Court "may consider whether the exercise of jurisdiction otherwise 'comport[s] with 'fair play and substantial justice.''" Id. (quoting Burger King, 471 U.S. at 476).  To satisfy the "purposeful availment" prong of the specific jurisdiction test, the defendant must have deliberately targeted the forum state. O'Connor, 496 F.3d at 317.

In this case, Plaintiff alleges that in 2006, Roy Matthews, President of Network Commodities, received and reviewed an unsolicited email from Defendant Miriello and also received many telephone calls from Miriello.  (Pls.' Opp'n 25.)  Defendant Miriello, however, argues that such communications, without more, are insufficient to confer specific jurisdiction because he did not purposefully direct his activities to New Jersey.  (Defs.' Br. 8.)  Defendant Miriello further argues that even if such communications established sufficient contacts, Plaintiffs'

jurisdictional proofs concern the alleged contractual relationship between Plaintiffs and Defendant Golondrinas Trading, and thus Defendant Miriello is not subject to personal jurisdiction because he only acted in his corporate capacity as president of Golondrinas.

In fact, Defendant Miriello relies quite heavily on the notion that the Court cannot exercise personal jurisdiction over him because all of his conduct was performed in his corporate capacity on behalf of Golondrinas.  However, in <u>Educational Testing Service v. Katzman</u>, 631 F. Supp. 550, 559 (D.N.J. 1986), after conducting a thorough review of cases from multiple courts in the Circuit, the District Court concluded that consistent with New Jersey law "actions taken within the forum state by a corporate official in his official capacity may be considered for purposes of establishing jurisdiction over him in his individual capacity" where the facts of the complaint also support individual liability on the part of that defendant.  <u>See also Nelligan v. Zaio Corp.</u>, No. 10-cv-1408, 2011 WL 1085525, at *4 n.9 (D.N.J. Mar. 21, 2011) (noting cases where "jurisdiction seems to exist over an individual defendant who is acting in a 'corporate capacity' if the defendant is personally involved in committing a tort, or where an a defendant could be held statutorily liable as an individual."); 3A Fletcher Cyc. Corp. § 1296.10 (noting that "personal jurisdiction may be exercised over

the officer as an individual defendant where the officer's acts are sufficient to subject the officer to personal liability, notwithstanding the fact that those acts were done in a corporate capacity.").

A similar concept for the exercise of personal jurisdiction also exists with respect to the Calder effects test.  The Third Circuit has determined that under the Calder test a plaintiff may demonstrate personal jurisdiction if he shows: "(1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." Marten v. Godwin, 499 F.3d 290, 297 (3d Cir. 2007) (citing IMO Indus. v. Kiekert AG, 155 F.3d 254, 265–66 (3d Cir. 1998).  Additionally, "[p]ersonal jurisdiction may be exercised over a non-resident defendant who, while present in the forum state, makes a deliberate misrepresentation during the course of negotiations or other direct oral communications with the plaintiff." Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992).

Bearing in mind the guidance from the Third Circuit in Carteret, and the notion that the Court may properly consider actions taken by Defendant Miriello in the state of New Jersey,

13

even in his corporate capacity, for the purposes of establishing personal jurisdiction, the Court is satisfied that jurisdiction over Miriello is proper here.  First, as set forth more fully infra, Plaintiffs have adequately alleged a claim for fraud in the inducement, and in doing so have demonstrated that Defendant Miriello is the person who made the misrepresentations which form the basis of that claim.  The facts further demonstrate that Miriello sought out Roy Matthews of Network Commodities for the express purpose of forming a business relationship and conducting future business with Plaintiff by email, telephone, and in-person meetings in the state of New Jersey, and that he engaged in this business relationship for several years with the intent to obtain serial cash advances from Plaintiff.  Moreover, given the extensive nature of the commercial transactions at issue here where Defendants: shipped seafood product into Newark, New Jersey; paid all duties and fees in New Jersey; employed a New Jersey common carrier to transport the goods; stored the goods at a New Jersey freezer storage facility in Perth Amboy; and distributed the goods for sale from New Jersey before paying proceeds back to Network Commodities in New Jersey, all at the apparent direction and instruction of Miriello as President, the Court is satisfied that there is no violation of Due Process here in the exercise of personal jurisdiction over Miriello.

Engaging in the primary conduct which constitutes the

intentional tort of fraud in the inducement by making affirmative misrepresentations to a New Jersey company operating in the state is sufficient in this instance to confer jurisdiction over Defendant Miriello.  Miriello cannot be allowed to shield himself from jurisdiction on the basis of his role as a corporate officer where allegations of the complaint sufficiently support an individual claim of liability against him for fraud in the inducement.  Accordingly, Defendants' motion to dismiss the Second Amended Complaint against Miriello for lack of personal jurisdiction is denied.

### B. Breach of Contract Claim Against Defendant Miriello

Defendants also move to dismiss Count One of Plaintiffs' complaint against Defendant Miriello pursuant to Rule 12(b)(6) alleging that Plaintiffs' cannot state a claim because Miriello is not a party to the contract itself, and thus cannot be held personally liable for any breach of that agreement.  (Defs.' Br. 27-28.)  Plaintiffs offer virtually no opposition with respect to this specific portion of Defendants' motion.  This is likely because, Miriello, as the agent for a disclosed principal, cannot be held personally liable on the contracts executed between Plaintiffs and Defendant Golondrinas. See Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd., 181 F.3d 435, 445 (3d Cir. 1999). Accordingly, Defendants' motion to dismiss Count One for Breach of Contract as to Defendant Miriello is granted.

15

### C. Fraud Claim

Defendants argue that Count Two of Plaintiffs' Second Amended Complaint alleging a claim or fraud in the inducement must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because (1) as alleged, the claim is barred by the economic loss doctrine; and (2) Plaintiffs have failed to adequately plead each element of fraud with particularity as required by Federal Rule of Civil Procedure 9(b). (Defs.' Br. 11-12.)

According to Defendants, although pled as a claim for fraud in the inducement of a contract, Count Two is more properly characterized as a claim for fraud in the performance of a contract and is therefore barred under the economic loss doctrine. (Defs.' Br. 13.) Defendants assert that rather than a series of shipping contracts between Plaintiffs and Defendants, the contracts at issue are in fact installment contracts. (Id. at 14). Defendants argue, then, that because the alleged misrepresentations were made after each Plaintiff entered into its respective installment contract, these misrepresentations were "all made during the course of the performance of the contracts[.]" (Id. at 15.) According to Defendants, this makes Count Two a claim for fraud in the performance of these installment contracts which is barred under the economic loss doctrine.

Plaintiffs argue that the parties did not enter into installment contracts in this case "because there were no agreed upon terms, especially as to quantity or price, prior to negotiating each of the series of individual agreements[.]" (Pls.' Opp'n 8.)  Rather, Plaintiffs contend that the parties entered into a series of isolated shipping contracts and that "each shipment was separately negotiated by the parties prior to the Plaintiffs making any cash advances."  (Id. at 7 n.4.)  Thus, the argument goes that each time the parties were negotiating, Defendants made material misrepresentations prior to the formation of each shipping contract so the fraud is in the inducement of each separate contract, not in the performance.

"The economic loss doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract.'"  Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F. Supp. 2d 557, 562 (D.N.J. 2002) (citing Duquesne Light Co. v. Westinghouse Elec. Co., 66 F.3d 604, 618 (3d Cir. 1995)).  Relevant to the application of the economic loss doctrine in New Jersey is the difference between claims for fraud in the inducement and fraud in the performance of a contract because there exists a "conceptual distinction between a misrepresentation of a statement of intent at the time of contracting, which then induces detrimental reliance on the part of the promisee, and the subsequent failure of the promisor to do

17

what he has promised." Lo Bosco v. Kure Eng'q Ltd., 891 F. Supp. 1020, 1032 (D.N.J. 1995). Based on this distinction, courts throughout the District of New Jersey "hold that fraud claims not extrinsic to underlying contract claims are not maintainable as separate causes of action." Gleason v. Norwest Mortg. Inc., 243 F.3d 130, 144 (3d Cir. 2001) (citing Lo Bosco, 891 F. Supp. at 1033); see also Bracco, 226 F. Supp. 2d at 564 ("The pattern that has emerged in New Jersey decisional law is that claims for fraud in the performance of a contract, as opposed to fraud in the inducement of a contract, are not cognizable under New Jersey law.").

However, fraud claims that are extrinsic to the underlying contract claims, such as fraud in the inducement, are not barred by the economic loss doctrine. See Bracco, 226 F. Supp. 2d at 564 (explaining that "to falsely state that one intends to honor a promise is a misstatement of present fact and breaches a separate and extraneous duty not to commit fraud"). A claim for fraud in the inducement under New Jersey law requires "a material misrepresentation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment." Gleason, 243 F.3d at 144–45. "[W]here a promise is given and the promisor knows at the time of promising that he has no intention of fulfilling it, the promise will constitute a

misstatement of present fact and may support an allegation of fraud[.]" Lo Bosco, 891 F. Supp. at 1031–32 (internal citation omitted).

Defendants apparently concede the point that a properly pled claim for fraud in the inducement is not barred by the economic loss doctrine.  (Defs.' Reply 3.)  To argue that Count Two is barred by the economic loss doctrine then, Defendants are forced to classify the Plaintiffs' respective contracts in this case as installment contracts such that any alleged misrepresentations were made after the contracts were initially formed and thus these misrepresentations amount only to fraud in the performance. Defendants rely heavily on certain portions of the Second Amended Complaint that refer to the so called "master agreements" entered between the parties.

"While the dividing line between extrinsic and intrinsic fraud claims may be fuzzy," see Touristic Enterprises Co. v. Trane Inc., No. 09–02732, 2009 WL 3818087, at *3 (D.N.J. Nov. 13, 2009), accepting the factual allegations in Plaintiffs' Second Amended Complaint as true and drawing all inferences from the facts alleged in the light most favorable to Plaintiffs, the Court is satisfied that the parties entered into a series of separately negotiated shipping contracts and that the allegations of fraud here are extrinsic to each of those underlying contracts.

19

Although Plaintiffs represent that the nature of their respective business relationships included the entry of a master agreement[3] to conduct future business, Plaintiffs' Second Amended Complaint adequately alleges that the terms of these master agreements provided for the subsequent negotiation of discrete, isolated shipping agreements where the price, quality, and quantity terms of the each individual shipping contract were negotiated independently with respect to every transaction prior to a wired cash advancement from Plaintiffs. (Sec. Am. Compl. ¶¶ 50, 61-62, 73, 80, 92, 123-124, 134, 155-156, 182-183); (<u>see also</u> Second Am. Compl. ¶¶ 66-67 (alleging that negotiation of the master "agreement was followed by discrete, isolated agreements that Network Commodities would wire specific amounts of advancements for specific amounts of product to be shipped by the Defendants" and "The price, quality and quantity per individual agreement would be separately negotiated at the time of entering into each discrete agreement."))

---

[3] Parties continuously refer to these so-called master agreements, yet neither Plaintiffs nor Defendants have attached copies of these master agreements to the pleadings in this case. Accordingly, the Court cannot independently evaluate the terms of these agreements.  The Court is bound, on this motion to dismiss, to accept as true Plaintiffs' factual assertions that the terms of these master agreements required the parties to enter into separately negotiated subsequent agreements.  Drawing all reasonable inferences from these facts in the light most favorable to Plaintiffs at this stage, it appears plausible that discovery will reveal evidence supporting this sort of arrangement and demonstrating that the parties did not enter installment contracts, as Defendants assert.

These allegations, accepted as true and considered in the light most favorable to Plaintiffs, are adequate to defeat Defendants' argument that the parties' contracts were in fact installment contracts.  Accordingly, if Plaintiffs have sufficiently alleged that Defendants falsely stated their intent to honor a promise made to Plaintiffs, such misstatements of present fact would qualify as a breach of a separate and extraneous duty not to commit fraud — a duty beyond those imposed by the contracts alone.  See Bracco, 226 F. Supp. 2d at 564; Lo Bosco, 891 F. Supp. at 1031–32 ("[W]here a promise is given and the promisor knows at the time of promising that he has no intention of fulfilling it, the promise will constitute a misstatement of present fact and may support an allegation of fraud" in the inducement).  Allegations of such conduct would support a claim for fraud in the inducement which would not be barred by the economic loss doctrine.  See Bracco, 226 F. Supp. 2d at 564.

In resolving this issue, again, the Court must accept as true Plaintiffs' factual assertions that for each discrete and separate agreement negotiated after approximately October 2008, Defendants promised at the time of the negotiations to ship additional seafood product in exchange for additional cash advancements, but intended, at that same time, to take Plaintiffs' money without any intention of shipping any product.

(See Second Am. Compl.  ¶¶ 73-74, 92-93, 134) (alleging that
"[W]hen it negotiated the specific oral agreements, Defendants
intended to take Network Commodities' [and Nebraskaland's] money
with no intention to ship any product" and "Defendants made these
promises without the expectation of honoring their promises by
shipping the seafood product."); (see also Id. ¶¶ 155-156, 182-
183) (asserting similarly that "beginning in October of 2008,
Defendant Miriello communicated with Stan Marvel from
Nebraskaland [and Roy Matthews from Network Commodities] on
numerous occasions, promising that if Nebraskaland [and Network
Commodities] advanced additional money, the Defendants would ship
seafood products.")  While this case may fall close to the edge
of that fuzzy dividing line between extrinsic and intrinsic fraud
claims, the Court finds these allegations are sufficient to
demonstrate at the motion to dismiss stage that Plaintiffs are
asserting claims for fraud in the inducement of each separately
negotiated agreement, a claim which is not barred by the economic
loss doctrine.  Therefore, the Court rejects Defendants' attempt
to dismiss Count Two on that basis.

Alternatively, Defendants seek to dismiss Count Two for
failure to plead this fraud claim with the requisite
particularity required under Federal Rule of Civil Procedure
9(b).  The district court may grant a motion to dismiss a fraud-
based claim pursuant to Rule 9(b) if the plaintiff fails to plead

with the required particularity. Fed. R. Civ. P. 9(b).  The
heightened pleading standard of Rule 9(b) requires that "in all
averments of fraud or mistake, the circumstances constituting
fraud or mistake shall be stated with particularity." Fed. R. Civ.
P. 9(b).  As other courts have explained, plaintiffs asserting
fraud claims must specify "'the who, what, when, where and how;
the first paragraph of any newspaper story." DiLeo v. Ernst &
Young, 901 F.2d 624, 627 (7th Cir. 1990).  The purpose of this
heightened requirement serves to put the defendants on "notice of
the claims against them, provides an increased measure of
protection for their reputations, and reduces the number of
frivolous suits brought solely to extract settlements." In re
Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir.
1996).  In the Third Circuit, plaintiffs may satisfy Rule 9(b)'s
requirement by pleading the "date, place or time" of the fraud,
or through "alternative means of injecting precision and some
measure of substantiation into their allegations of fraud."
Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d
786, 791 (3d Cir. 1984).  Plaintiffs also must allege who made a
misrepresentation to whom and the general content of the
misrepresentation. See Saporito v. Combustion Eng'g, 843 F.2d
666, 675 (3d Cir. 1988).

   To the extent Defendants contend that Plaintiffs' fraud in
the inducement claim fails because the alleged misrepresentations

were made after the contracts were entered between the parties
such that Plaintiffs could not have been fraudulently induced,
the Court has already rejected the underlying basis for that
argument and this contention again fails.  However, Defendants
are correct that the specific paragraphs of Plaintiffs' Second
Amended Complaint cited in their brief are insufficient, standing
alone, to meet the requirements of Rule 9(b).  Defendants,
though, appear to disregard numerous other paragraphs of the
complaint and its attached invoices — specifically paragraphs 50,
61-62, 73-74, 80, 92-93, 123-124, 134, 155-156, and 182-183.

Read together and accepted as true, these paragraphs, along
with the invoices, detail the specific who, what, where, when,
and how of Plaintiffs' fraud in the inducement claim with
sufficient particularly for purposes of Rule 9(b) to put
Defendants on notice of the alleged misconduct that forms the
basis of the fraud claim.  Plaintiffs allege that during the
course of negotiations from October of 2008 through February of
2009 (on the specific dates outline in the invoices), Miriello
made statements to Marvel and Matthews that Defendants would ship
seafood product in exchange for cash advancements, even though
Defendants had no intention to do so, and the Miriello made these
statements and communications for the purpose of convincing
Plaintiffs to wire cash to Defendants.  Plaintiffs allege that
Miriello knew at the time of these statements that no such

shipments would be made, and these allegations collectively are sufficient to survive a motion to dismiss under Rule 9(b) at this time.

### D. Unjust Enrichment

Defendants also argue that Plaintiffs' unjust enrichment claim "must be dismissed because the alleged contracts govern the rights of the parties." (Defs.' Br. 19.) Defendants argue that Plaintiffs' claims are based on so-called "master agreements" for the shipment of seafood product and note that Plaintiffs attached to the Second Amended Complaint copies of the invoices "at the center of the alleged contractual dispute." (Id.) Defendants also contend that Plaintiffs' claim for damages on its unjust enrichment claim as alleged in Count Three "is exactly the same as its claim for damages on its breach of contract claim" for the amounts set forth in the invoices. (Id. at 19-20.) Therefore, Defendants argue, Plaintiffs' unjust enrichment claim must be dismissed because it expressly arises out of the alleged contracts between the parities. (Id. at 20.)

In making this argument, Defendants correctly note that "[u]nder New Jersey law, 'recovery under unjust enrichment may not be had when a valid, unrescinded contract governs the rights of the parties.'" (Defs.' Br. 18) (citing Van Orman v. Am. Ins. Co., 680 F.2d 301, 310 (3d Cir. 1982)). However, Van Orman was

an appeal from an order of the district court granting in part plaintiffs' motion for summary judgment on the unjust enrichment claim. 680 F.2d at 314. By contrast, before the Court at this time is a motion to dismiss, as opposed to a motion for summary judgment.

While a plaintiff may ultimately be precluded from recovering on both a breach of contract claim and on an unjust enrichment claim, a plaintiff is not precluded from pleading both claims as alternative theories of recovery at the motion to dismiss stage. See In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517, 544 (D.N.J. 2004). In this District, multiple courts have allowed a plaintiff to plead claims under both theories of recovery in the alternative and have declined to dismiss unjust enrichment claims at the motion to dismiss stage finding such a dismissal premature. MK Strategies, LLC v. Ann Taylor Stores Corp., 567 F. Supp. 2d 729, 736 (D.N.J. 2008) (recognizing that courts in this District have "regularly permitted claims for both unjust enrichment and breach of contract to proceed at the motion to dismiss stage, finding that dismissal of one of these claims would be premature.") (citing Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 528-29 (D.N.J. 2008); Titan Stone, Tile & Masonry, Inc. v. Hunt Constr. Group, Inc., No. 05-3362, 2006 WL 2788369, at *5 (D.N.J. Sept. 26, 2006); Myers v. MedQuist, Inc., No. 05-4608, 2006 WL 3751210, at *8 (D.N.J. Dec. 20, 2006)).

To be clear, Defendants seek to dismiss Plaintiffs' claim for unjust enrichment strictly on the basis that recovery on this claim is precluded by virtue of the parties' express contracts and do not argue that Plaintiffs have failed to allege the necessary elements of the claim.  Accordingly, the Court finds that dismissal of Plaintiffs' unjust enrichment claim on that basis would be premature at the motion to dismiss stage of these proceedings.[4]  Defendants' motion to dismiss Count Three of the Second Amended Complaint is therefore denied.

**E. Federal and State RICO Claims**

As explained by the Third Circuit:

> The [federal] RICO statute authorizes civil suits by "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]."  18 U.S.C. § 1964© (1988).  Section 1962 contains four separate subsections, each addressing a different problem.  Section 1962(a) prohibits "any person who has received any income derived ... from a pattern of racketeering activity" from using that money to acquire, establish or operate any enterprise that affects interstate commerce.  Section 1962(b) prohibits any person from acquiring or maintaining an interest in, or controlling any such enterprise "through a pattern of racketeering activity."

---

[4] However, at a later stage of this litigation, if it is found that valid contracts exist on the terms Plaintiffs assert, then the existence of these contracts would preclude Plaintiffs from recovering on a theory of unjust enrichment.  Alternatively, if it is determined that these contracts are void, Plaintiffs may then only proceed on their unjust enrichment claim rather than their breach of contract claim.  See Mendez v. Avis Budget Group, Inc., No. 11-6537, 2012 WL 1224708, at *8 (D.N.J. April 20, 2012).  At this time though, Federal Rule of Civil Procedure 8 permits Plaintiffs claims for both breach of contract and unjust enrichment to be pled in the alternative.

> Section 1962© prohibits any person employed by or associated with an enterprise affecting interstate commerce from "conduct[ing] or participat[ing] ... in the conduct of such enterprise's affairs through a pattern of racketeering activity." Finally, section 1962(d) prohibits any person from "conspir[ing] to violate any of the provisions of subsections (a), (b), or ©."

Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1411 (3d Cir. 1991).

In order to adequately plead a federal RICO violation,[5] a plaintiff must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, and a pattern of racketeering activity requires at least two predicate acts of racketeering. Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985). These predicate acts of racketeering may include, inter alia, federal mail fraud under 18 U.S.C. § 1341 or federal wire fraud under 18 U.S.C. § 1343. See 18 U.S.C. § 1961(1). The federal mail and wire fraud statutes prohibit the use of the mail or interstate wires for purposes of carrying out any scheme or artifice to defraud. See 18 U.S.C. §§ 1341, 1343. With respect

---

[5] The New Jersey Supreme Court has previously recognized the state RICO statute, which was modeled on its federal counterpart, should be construed in conformity with the federal RICO statute. See Cetel v. Kirwan Financial Group, Inc., 460 F.3d 494, 510 (3d Cir. 2006) (citing State v. Ball, 141 N.J. 142, 155-56, 661 A.2d 251 (1995)). Because the same analysis applies to both Plaintiffs' state and federal RICO Claims, the Court does not separately address the sufficiency of Plaintiffs' state RICO claims as its finding with respect to the federal claim is applicable to both Counts Four and Five of the Second Amended Complaint.

to mail and wire fraud, "a scheme or artifice to defraud 'need not be fraudulent on its face, but must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension.'" Kehr, 926 F.2d at 1415 (citation omitted).  Moreover, although a scheme to defraud does not require affirmative misrepresentations be made, "the statutory term 'defraud' usually signifies the deprivation of something of value by trick, deceit, chicane or overreaching."  Id. (citation and internal quotations omitted).

The Third Circuit has instructed that where a plaintiff relies on mail and wire fraud as a basis for a RICO violation, the allegations of fraud must comply with Federal Rule of Civil Procedure 9(b), which requires that allegations of fraud be pled with specificity.  Kolar v. Preferred Real Estate Investments, Inc., 361 F. App'x 354, 363 n.8 (3d Cir. 2010) (citing Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir.2004)).  Accordingly, to satisfy Rule 9(b), a plaintiff must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  Id. at 223–24.  A plaintiff may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their

29

allegations of fraud." <u>Kolar</u>, 361 F. App'x at 363 n.8 (citing <u>Lum</u>, 361 F.3d at 224).  A plaintiff must "also must allege who made a misrepresentation to whom and the general content of the misrepresentation." <u>Lum</u>, 361 F.3d at 224.

As a threshold matter, Defendants argue that Plaintiffs have failed to plead the predicate acts of mail and wire fraud with the particularity required by Rule 9(b).  (Defs.' Br. 24.)  In making this argument, Defendants assert that the Second Amended Complaint only alleges communications concerning the performance of the parties' contracts and does not allege a scheme to defraud but simply recites the elements of the RICO claims without providing any factual support.  (<u>Id.</u> at 24-25.)  The Court rejects Defendants' argument with regard to the issue of Rule 9(b) particularity for pleading mail and wire fraud claims under RICO.

The Third Circuit has required plaintiffs to put defendants on notice with regard to the misconduct that is alleged by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  As the Court set forth <u>supra</u> with regard to Plaintiffs' fraud in the inducement claim, the Court similarly finds that the allegations of the Second Amended Complaint meet the Rule 9(b) pleading standard.  Taken as true and viewed in the light most favorable

to Plaintiffs, the Second Amended Complaints put Defendants on notice of the alleged misconduct: i.e., statements made by Defendant Miriello to Marvel and Matthews by telephone and email between October 2008 and February 2009 (on the specific dates of the invoices attached to the complaint) that additional cash advances from Plaintiffs would result in the shipment of seafood product, although Miriello never intended to make such shipment, and that these statements were made for the purpose of obtaining serial cash advances from Plaintiffs by wire and by mail.

These allegations clearly assert that fraudulent misrepresentations were repeatedly made by Miriello which were reasonably calculated and expressly designed to deceive Plaintiffs into wiring further cash advances by the use of trickery, deceit, and dishonesty on the part of Miriello. See Kehr, 926 F.2d at 1415. Plaintiffs allege that Defendants executed this scheme by fulfilling prior contractual obligations between the parties to build trust at the inception of their business relationships in order to subsequently employ dishonest methods to obtain Plaintiffs' money. These allegations can fairly be said to assert specific communications, the dates they were made, the nature of the communications, how they were made, who made these communications to whom, and for what purpose. Thus, Plaintiffs have thus injected a sufficient amount of precision and substantiation into their fraud claims. Overall,

the Court is satisfied that Rule 9(b) has been met with respect
to the RICO allegations in Counts Four and Five.

Defendants also argue that Plaintiffs' RICO claims fail to
sufficiently allege a pattern of racketeering activity, or that
there is a threat that the alleged conduct will continue.
Defendants correctly note that a pattern of racketeering activity
"requires more than the [mere] commission of the requisite number
of predicate acts ... [but requires a] plaintiff must show also
'that the racketeering acts are related, and that they amount to
or pose a threat of continued criminal activity.'"  Kehr, 926
F.2d at 1412.

The Court accepts for purposes of this motion that the
predicate acts Plaintiffs complain of are sufficiently related
because the allegations of the Second Amended Complaint make
clear that these acts of mail and wire fraud all had similar
purposes (obtaining cash advances by falsely promising to ship
product without any actual intent to do so), results (cash
advancements were wired to Defendants who did not make shipment
and kept Plaintiffs' money), participants and victims (Miriello,
Marvel, Matthews, Nebraskaland and Network Commodities), and
methods of commission (email and telephone communications from
Miriello to Plaintiffs in order to secure wire transfers).
However, the Court finds that Plaintiffs' Second Amended
Complaint fails with respect to the continuity requirement to

demonstrate a pattern of racketeering activity.

In order to comprise a "pattern" under the RICO statute, Plaintiffs must demonstrate both the "relatedness" and "continuity" tests. Kehr, 926 F.2d at 1412. With respect to continuity, "related predicate acts in furtherance of a single scheme can constitute a pattern if the acts constitute or present the threat of long-term continuous criminal activity." Id. More specifically, "continuity refers 'either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.'" Id. (citation omitted). Continuity represents a temporal concept and a "short-term scheme threatening no future criminal activity will not suffice." Id. Accordingly, "the length of time over which the criminal activity occurs or threatens to occur is an important factor" for the Court to consider and "'[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement[.]'" Id. (citation omitted). "Thus, although a single fraudulent scheme can give rise to RICO liability, when that scheme is short-lived and directed at a limited number of people, this court has required some further indication that the defendant's fraudulent activities are likely to continue." Id. at 1413. In this particular case, Plaintiffs' Second Amended Complaint fails to allege any further indication these activities are likely to

33

continue.

While it is clear from the Second Amended Complaint and their opposition[6] that Plaintiffs suspect Defendants have engaged in this same conduct in order to similarly defraud multiple companies out of millions of dollars, their allegations in this regard are woefully insufficient to support the continuity requirement for their RICO claims.  Based on the Second Amended Complaint, it is clear that Defendants' alleged conduct lasted only approximately five months from October 2008 through February 2009, a relatively short period of time, and was aimed at a limited number of entities – the two Plaintiffs in this action. Plaintiffs provide no other facts which the Court could accept as true to infer that other companies were subjected to similar conduct.  Plaintiffs do not allege the names of any other corporations, business, or individuals aware of Defendants engaging in similar behavior as alleged here.  Nor do Plaintiffs allege the existence of any other law suits against Defendants alleging similar conduct, or related criminal or regulatory investigations.  It further appears that both Plaintiffs have ceased doing business with Defendants and thus no facts in the

---

[6] See, e.g., (Second Am. Compl. ¶ 12) ("Upon information and belief, Defendants utilized this scheme both before, during, and after the scheme alleged herein on other persons not parties to this suit."); (Pls.' Opp'n 21-22) ("[B]ased upon the Defendants' failure to respond to their demands for payment, Plaintiffs believe that the Defendants' unlawful activity has continued and will continue until they are held accountable.")

complaint exist to indicate Defendants' fraudulent conduct will continue or that there exists a threat of ongoing criminal activity.  Accordingly, because Plaintiffs have failed to demonstrate the continuity requirement of a pattern of racketeering activity, the Court dismisses Counts Four and Five of the Second Amended Complaint.

## V. <u>CONCLUSION</u>

For the reasons expressed above, Defendants' Motion to Dismiss is granted in part and denied in part.  Plaintiffs' RICO claims as alleged in Counts Four and Five of the Second Amended Complaint will be dismissed, as will Count One for breach of contract against Defendant Miriello.  An appropriate Order will be entered.

Date: March 28, 2013                     s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

35